**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

KEVIN AUGU MENENDEZ, *et al.*,      *

      Plaintiffs,      *

      *

      v.      *      Civil Action No. 8:24-261-AAQ

      *

WILLIAM III, INC., *et al.*,      *

      Defendants.      *

      *

      ******

**MEMORANDUM OPINION AND ORDER**

This is a dispute over unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.  Pending before the Court is a Joint Motion for Approval of Settlement of said dispute between the parties pursuant to 29 U.S.C. § 216.  ECF No. 29.  For the reasons discussed below, the Joint Motion shall be GRANTED, and the case shall be STAYED.

**BACKGROUND**

William III is a Maryland-based corporation that owns and operates multiple coffee shops in Maryland and D.C. through a contract with the United States Navy.  ECF No. 1, at 3. Defendants William and Maria Cummings are the owners of William III and, according to the Plaintiffs' Complaint, were both significantly involved in William III's business operations during the period relevant to this case.  *Id.* at 3-4.  Specifically, Plaintiffs allege that Defendants William and Maria Cummings controlled, among other things, the allocation of funds within William III, the hiring and firing of employees, and the hourly rates paid to employees.  *Id.*

1

Plaintiffs Kevin Augu Menendez Cervantes (Plaintiff Augu), Andrea Gissel Menendez Cervantes (Plaintiff Menendez), and Esmeralda Sarai Espinal Menjivar (Plaintiff Espinal) worked at a coffee shop owned and operated by Defendant William III in Bethesda, Maryland. *Id.* at 3. Plaintiff Augu alleges that he worked at the coffee shop from July 2022 to November 2022 and from July 2023 to January 11, 2024, working an average of 47 hours per week. ECF No. 29, at 2. Plaintiff Menendez alleges that she worked at the coffee shop from February 2021 to July or August 2021 and from July 2022 to January 11, 2024, working an average of 45 hours per week. *Id*. Plaintiff Espinal alleges that she worked at the coffee shop from April 19, 2022, to January 11, 2024, working an average of 50 hours per week. *Id.* While all Plaintiffs worked overtime hours, they allege that they were not paid an overtime premium for those hours, and, for some hours of work, were not paid anything at all. *Id.* at 1-2. Plaintiffs further allege that Defendants' actions were willful and not taken in good faith, *id*. at 2, while Defendants maintain that any FLSA violations resulting from their actions were not willful, *id.* at 4.

Plaintiffs initiated this lawsuit on January 26, 2024. ECF No. 1. According to the Complaint, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-216(b), by: (1) knowingly failing to pay Plaintiffs an overtime premium for their overtime hours and (2) failing to pay Plaintiffs anything for some hours of work. ECF No. 1, at 7-8. Plaintiffs sought unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs. *Id.* at 8.

Defendants retained counsel who initiated settlement discussions with the Plaintiffs, though they never entered an appearance on Defendants' behalf. ECF No. 29, at 2. During these initial negotiations, Defendants provided Plaintiffs with Defendants' time and payroll records for the relevant period. *Id.* Soon thereafter, Defendants' original counsel stopped working on this case. *Id.* Plaintiffs moved for Clerk's Entry of Default as to all Defendants on April 12, 2024,

ECF Nos. 9-11, which the Clerk entered on April 15, 2024, ECF No. 12.   Plaintiffs then filed a Motion for Default Judgment on August 9, 2024, ECF No. 17, and served Defendants with notice of their Motion, ECF No. 18.   Thereafter, Defendants retained new counsel to resume settlement negotiations.   ECF No. 29 at 2.   After several weeks of negotiation, the parties reached the Settlement Agreement now before the Court.   ECF No. 29-1.

Defendants have agreed to pay Plaintiffs $21,089.16, divided as follows: 1) Plaintiff Augu $2,353.47 in unpaid wages and the same in liquidated damages; 2) Plaintiff Menendez $1,916.96 in unpaid wages and the same in liquidated damages; and 3) Plaintiff Espinal $6,274.16 in unpaid wages and the same in liquidated damages.[1]   ECF No. 29 at 3; ECF No. 29-1, at 8.   These amounts are based on the alleged number of unpaid hours—both straight-time and overtime— Plaintiffs worked during the relevant period, as confirmed by Defendants' payroll records.   ECF No. 29, at 5.   Additionally, Defendants have agreed to pay Plaintiffs $21,410.84 in attorneys' fees and costs.   *Id.* at 7.

## STANDARD OF REVIEW

When evaluating settlement agreements for approval under the FLSA, courts must ensure that a settlement "reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"   *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In making such a determination, district courts in the Fourth Circuit typically "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*," which holds that "an FLSA

---

[1] While the Joint Motion for Judicial Approval of FLSA Settlement improperly identifies which Plaintiff will receive which sum of money, ECF No. 29 at 3, the recipients are clarified in Exhibit A to the Settlement Agreement and Release, ECF No. 29-1, at 8.

settlement generally should be approved if it reflects a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355).    As part of this assessment, courts must evaluate: (1) whether there are FLSA issues actually in dispute; (2) whether the settlement is fair and reasonable in light of the relevant factors; and (3) whether the attorney's fees, if included in the agreement, are reasonable.    *Id.* (citing *Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *2-3 (D. Md. Aug. 31, 2011); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

## DISCUSSION

The parties have asked the Court to approve their proposed Settlement Agreement and stay this case.    The Court finds that approval is proper as the Settlement Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties.

### A.  Existence of a *Bona Fide* Dispute

To determine "whether a *bona fide* dispute exists as to a defendant's liability under the FLSA," the Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement."    *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo*, 2009 WL 3094955, at *16-17).    A disagreement over whether an FLSA violation was willful constitutes a *bona fide* dispute for FLSA claims, *see Wegner v. Carahsoft Tech. Corp.*, No. CV PJM 20-00305, 2022 WL 316653, at *2 (D. Md. Feb. 1, 2022); *Navarro v. Eternal Trendz Cust.*, LLC, No. CIV. TDC-14-2876, 2015 WL 898196, at *2 (D. Md. Mar. 2, 2015); *Strother v. OS Rest. Services*, LLC, No. 8:22-CV-0845-AAQ, 2023 WL 1769733, at *2 (D. Md. Feb. 3, 2023), as does a disagreement over whether a defendant can be held personally liable, *see Riveros v. WWK Constr., Inc.*, No. CV PJM 15-193, 2015 WL 5897749, at *2 (D. Md. Oct. 5, 2015).

4

In their Joint Motion, the parties state that "[t]here is a bona fide dispute in this case," because the Defendants dispute: (1) whether any violations of the FLSA were willful, and (2) whether Defendants William and Maria Cummings are individually liable under the FLSA. ECF No. 29, at 4-5. Courts in this District have found these issues to be *bona fide* disputes. Accordingly, the Court finds that a *bona fide* dispute exists between the parties under the FLSA.

**B. Fairness and Reasonableness of the Settlement Agreement**

Next, the Court considers whether a settlement agreement is fair and reasonable. In assessing whether a settlement is fair and reasonable, the Court should evaluate the following six factors:

> (1) [T]he extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of . . . counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (second omission in original) (quoting *Lomascolo*, 2009 WL 3094955, at *10).

The first factor asks courts to consider the extent to which discovery has taken place. When looking at this factor, courts assess whether the parties have "had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955, at *11 (alteration in original) (quoting *A.H. Robins Co. v. Aetna Cas. & Sur. Co. (In re A.H. Robins Co.)*, 88 B.R. 755, 760 (E.D. Va. 1988)). While the parties in this case did not conduct formal discovery, "[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation [can be] made available for settlement, and the risk and uncertainties for both parties [can be] reduced." *Duprey*, 30 F.Supp.3d at 409.

5

Additionally, the parties engaged in informal discovery, wherein Defendants provided Plaintiffs several hundred pages of time and payroll records which Plaintiffs used to calculate their settlement demands.  ECF No. 29, at 2.  Such informal discovery can support a finding that a settlement agreement is fair and reasonable.  *See Navarro*, 2015 WL 898196, at *3 (finding a settlement agreement to be fair and reasonable where defendant provided plaintiffs with wage/hour records during informal discovery which were used to calculate settlement demand); *Saman*, 2013 WL 2949047, at *4 (same).   As such, the first factor weighs in favor of finding that the Settlement Agreement is fair.

The second factor looks to the current stage of the proceedings.   Settlements can be found to be fair where proceeding further would be difficult and costly and the parties would prefer to end proceedings before significant investment in litigation.   *See Black v. Reviera Enter., Inc*., No. DLB-19-201, 2020 WL 6544820, at *2 (D. Md. Nov. 6, 2020) (holding that a settlement agreement was fair and reasonable where parties recognized remaining discovery would require significant investment of time, effort, and financial resources); *Saman*, 2013 WL 2949047, at *4 (finding that the parties' representation that they chose to settle "to avoid the costs of formal discovery, dispositive motions, and a possible trial" supported a finding that the settlement agreement was fair and reasonable).  Here, the parties aver that the settlement "enables all parties to avoid unnecessary accumulation of litigation costs and attorneys' fees."   ECF No. 29, at 6.  Given the parties' joint preference to terminate proceedings early rather than invest time and money into litigation, this factor weighs in favor of finding that this Settlement Agreement is fair.

The third factor assesses whether there has been fraud or collusion in the formation of the settlement.   There are no facts before the Court that suggest either, allowing the "presumption that no fraud or collusion occurred between counsel."   *Lomascolo*, 2009 WL 3094955, at *12.

6

Further, the parties attest that the Settlement Agreement "is the product of good-faith bargaining between the parties, absent any fraud or collusion, with advice of competent legal counsel on both sides." ECF No. 29, at 6. Accordingly, this factor weighs in favor of approving the Settlement Agreement.

Under the fourth factor, courts look to the experience of counsel. Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement. *See Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 366 (D. Md. 2016) (finding a fair and reasonable settlement where counsel had litigated numerous lawsuits involving wage and hour violations). Here, Plaintiffs are represented by the firm Melehy & Associates LLC, which "concentrates its practice in employment law," including wage and hour disputes. ECF No. 29-2 at 1. Plaintiffs' counsel avers that they "have significant experience litigating wage-and-hour cases on behalf of plaintiffs before this Court," and other federal and state-level courts. ECF No. 29 at 11. Accordingly, the Court is satisfied that Plaintiffs' counsel is sufficiently experienced in litigating similar matters; thus, this factor weighs in favor of approving the Settlement Agreement.

The fifth factor incorporates the opinions of counsel. Counsel's opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement. *See Castro v. Early Learning Language Acads., LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021). In their Joint Motion, both counsel aver that the Settlement "will enable the parties to resolve this matter" while avoiding the "risks, burdens, and expenses of extensive litigation," and that "all parties agree that the settlement is fair and reasonable." ECF No. 29, at 6. While "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed," *Saman*, 2013 WL 2949047, at

*5 (quoting *Lomascolo*, 2009 WL 3094955, at *12), their representations weigh in favor of approving the Settlement Agreement.

Applying the sixth factor, courts weigh the probability of a plaintiff's success and the relationship between the amount of the settlement and the potential recovery.  In this case, the parties "agreed as to the total overtime hours that each Plaintiff worked and agreed on the amount of off-the-clock work time Plaintiffs were claiming wages for."  ECF No. 29, at 5.  Then, "after agreeing on the unpaid wages for each Plaintiff, Defendants agreed to pay an equivalent amount to each Plaintiff as liquidated damages and pay Plaintiffs' reasonable attorneys' fees and costs." *Id.*  Defendants have agreed to pay the maximum amount of liquidated damages under the FLSA even though they maintain that they acted in good faith, not willfully, and therefore may not be subject to liquidated damages.  *See Navarro*, 2015 WL 898196, at *2 ("Under the FLSA, the court need not award liquidated damages if the employer acted in good faith.").  Similarly, Defendants have agreed to pay all unpaid wages throughout the relevant period, even though they may only be liable for two years' worth of overtime pay rather than three.  *Id.*  ("[T]here is a three-year statute of limitations on willful violations of FLSA and only a two-year statute of limitations on other violations of FLSA.").  Given that the parties agree that the recovery identified in the Settlement Agreement "represents Plaintiffs' best day in Court," it is highly unlikely that Plaintiffs could obtain a higher recovery outside of settlement.  ECF No. 29, at 5.  Accordingly, the sixth favor weighs heavily in favor of approving the Settlement Agreement.

This Settlement Agreement does include a general release of claims by the Plaintiffs that exceed those specified in the Complaint.  ECF No. 29-1 at 2.  Such a release can render a settlement agreement unreasonable.  *Duprey*, 30 F. Supp. 3d at 410 (citing, *inter alia*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010)); *Saman*, 2013 WL 2949047, at *5.

8

However, as long as the "employee is compensated reasonably for the release executed, the settlement can be accepted," and the Court need not consider the "reasonableness of the settlement as to the non-FLSA claims." *Duprey*, 30 F. Supp. 3d at 410. *See also Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *1 (D. Md. June 14, 2021) (finding settlement reasonable despite presence of general release); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *1 (D. Md. Mar. 24, 2021) (same). As noted above, the Settlement Agreement provides Plaintiffs with all their claimed unpaid wages as well as full liquidated damages, even though Defendants maintain that they acted in good faith. As such, the Settlement Agreement includes fair compensation for the release, and the release does not render the Settlement Agreement unreasonable.

The Settlement Agreement also contains a "Mutual Non-Disparagement" clause, which precludes the publishing of any "false remarks" about Defendants, and a partial confidentiality provision, which prohibits Plaintiffs from publishing information about the settlement amounts on the internet or social media for a period of 24 months. ECF No. 29-1, at 2-3. Both confidentiality and non-disparagement clauses can render a settlement agreement unreasonable. *See*, *e.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, at *177-181 (S.D.N.Y. 2015); *Brockman v. Keystone Newport News, LLC*, No. 4:15-CV-74, 2018 WL 4956514, at *5-6 (E.D. Va. Oct. 12, 2018). However, non-disparagement clauses in an FLSA settlement are not *per se* objectionable, especially if they include a "carve-out for truthful statements," as done here. *See Lopez*, 96 F. Supp. 3d at *180 n.65. Additionally, courts in this District have found that fair compensation for a general release, as discussed above, may also represent fair compensation for non-disparagement provisions in a settlement agreement. *See Nyamira v. Little Kampala Services, LLC*, No. CV DKC 17-3379, 2018 WL 5026371, at *4 (D. Md. Oct. 17, 2018). *See also Boiro v. Aroma Rest.*

9

*& Lounge*, LLC, No. CV AAQ-23-1464, 2024 WL 895110, at *2-3 (D. Md. Feb. 29, 2024) (finding a settlement agreement with a non-disparagement provision to be fair and reasonable); *Saman*, 2013 WL 2949047, at *2, *5 (same); *Hesman Tall v. MV Transp.*, No. CIV.A. DKC 13-2306, 2015 WL 302827, at *1 (D. Md. Jan. 22, 2015) (same); *Beam v. Dillon's Bus Serv., Inc.*, No. CIV.A. DKC 14-3838, 2015 WL 4065036, at *2, *4 (D. Md. July 1, 2015) (same).   Here, the Settlement Agreement reflects fair compensation for the non-disparagement provision, particularly given the Agreement's "carve-out" for truthful statements.

As for the partial confidentiality clause, it remains true that "[c]onfidentiality clauses are generally 'not permitted without compelling reasons.'"  *Boiro*, 2024 WL 895110, at *3 (quoting *Salamone v. Balt. Diamond Exch.*, Inc., No. JKB–14–1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014)).   However, when an agreement is "filed as a matter of public record," as this one is, any confidentiality clause "is of no practical effect."  *Id.* (quoting *Salamone*, 2014 WL 2930788, at *1).   Additionally, the Settlement Agreement itself provides that "nothing shall prohibit Plaintiffs from posting, sharing or otherwise publishing any information related to this case which is, or will become, part of the public record by virtue of being contained in the court filings in this case."  ECF 29-1 at 2-3.   Accordingly, neither the non-disparagement provision nor the partial confidentiality clause renders the Settlement Agreement unreasonable.

Upon consideration of the relevant factors, the Court finds the Settlement Agreement to be fair and reasonable.

### C. Reasonableness of Attorney's Fees

The Settlement Agreement must also contain reasonable provisions for allocating attorney's fees and costs.  *Duprey*, 30 F.Supp.3d at 411.   Here, the parties have decided upon an

10

allocation of $21,410.84 in attorney's fees and costs.  ECF No. 29, at 7.  The fee award is a product of a contingency agreement between Plaintiffs and their counsel.  ECF No. 29, at 11.

"[A]n attorneys' fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach."  *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014).  The lodestar approach "multiplies 'the number of hours reasonably expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'"  *Id.* (omission in original) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)).  This Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules.  U.S. District Court, District of Maryland, Local Rules (D. Md. Jul. 2023).

The parties aver in their Joint Motion that they negotiated attorneys' fees and costs separately from Plaintiffs' damages.  ECF No. 29, at 11.  The Settlement Agreement provides for $20,320.85 in attorneys' fees and $1,089.99 in costs.  ECF No. 29, at 7.  Plaintiffs' counsel calculated their fee request by first determining their lodestar amount of $25,396.50, and then, as part of the settlement compromise, reducing that figure by approximately twenty percent.  ECF No. 29, at 7; ECF No. 29-4, at 1.

According to the Joint Motion, Plaintiffs' counsel spent 64.7 billable hours working on this case.  ECF No. 29, at 7.  Plaintiffs' counsel asserts, and the Court agrees, that this total is

reasonable given that counsel: (1) represented three Plaintiffs with individual claims, (2) reviewed several hundred pages of payroll records received during informal discovery, (3) prepared and filed a Motion for Default Judgment, and (4) engaged in settlement negotiations.    ECF No. 29-4, at 1-2.    Regarding hourly rates, Plaintiffs' counsel charged as follows: Mr. Omar Vincent Melehy has 37 years of experience and charged an hourly rate of $675; Ms. Suvita Melehy has 28 years of experience and charged an hourly rate of $625; and Mr. Andrew Balashov has 8 years of experience and charged an hourly rate of $450.    ECF No. 29, at 7.    Plaintiffs' counsel also charged an hourly rate of $240 for the work of the firm's paralegals and law clerks.    *Id.*

These hourly rates are higher than the presumptively reasonable rates outlined in Appendix B to this Court's Local Rules.    However, this Court has found these rates to be reasonable in FLSA wage-and-hour cases when considering counsel's experience and the prevailing market rates.    *See Flores v. Diverse Masonry Corp.*, Civil Action No. 23-cv-03215-LKG, 2024 U.S. Dist. LEXIS 100544, at *15 (D. Md. June 6, 2024); *Hernandez v. Nelson Precast Prods., LLC*, Civil Action No. 21-cv-02814-LKG, 2023 U.S. Dist. LEXIS 192073, at *14 (D. Md. Oct. 26, 2023). Additionally, Plaintiffs' counsel agreed to reduce their lodestar by approximately twenty percent, thereby lowering the attorneys' fees from $25,396.50 to $20,320.85 and narrowing the discrepancy between the guidelines and the requested rates.    ECF No. 29, at 7; ECF No. 29-4, at 1. Accordingly, the Court finds that the Settlement Agreement awards reasonable attorney's fees and costs.

**CONCLUSION**

For the reasons stated above, the Joint Motion for Approval of Settlement shall be GRANTED and this case shall be STAYED.

So ordered.

Date:   December 17, 2024                                 _____/s/_____

Ajmel A. Quereshi
United States Magistrate Judge